THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

| | |
|---|---|
| MILDRED J.,[1] ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 23 C 396 |
| v. ) | |
| ) | Magistrate Judge Laura K. McNally |
| FRANK BISIGNANO, ) | |
| ) | |
| Commissioner of Social Security,[2] ) | |
| ) | |
| Defendant. ) | |

ORDER[3]

Before the Court is Plaintiff Mildred J.'s memorandum in support of summary judgment, asking the Court to remand the Administrative Law Judge's ("ALJ") decision granting in part and denying in part her application for disability benefits (Dkt. 11: Pl. Mem. in Support of Summ. J.: "Pl. Mem.") and Defendant's motion and memorandum

---

[1] The Court in this order is referring to Plaintiff by her first name and first initial of her last name in compliance with Internal Operating Procedure No. 22 of this Court.

[2] The Court substitutes Frank Bisignano for his predecessor, Leland Dudek, as the proper defendant in this action pursuant to Federal Rule of Civil Procedure 25(d) (a public officer's successor is automatically substituted as a party).

[3] On February 8, 2023, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this case was reassigned to the magistrate judge for all proceedings, including entry of final judgment. (Dkt. 8.)

in support of summary judgment (Dkt. 13: Def. Mot. for Summ. J.; Dkt. 14: Def. Mem. in Support of Summ. J.: "Resp.")

I.  **Procedural History**

Plaintiff filed her application for supplemental security income on June 3, 2020. (R. 189-97.) She alleged that her onset date was February 1, 2020. (*Id.*)

On December 6, 2021, Plaintiff appeared for a hearing before ALJ Margaret Carey. (R. 33-72.) The ALJ heard testimony from Plaintiff, who was represented by an attorney, and a vocational expert. On March 25, 2022, the ALJ issued an opinion finding that Plaintiff was disabled for a closed period from February 1, 2020 through March 31, 2021. (R. 15-26.) The ALJ also determined that Plaintiff showed medical improvement and was not disabled beginning on April 1, 2021, through the date of the decision. (*Id.*) The Appeals Council denied review (R. 1-6), making the ALJ's decision the final decision of the Commissioner. *Pufahl v. Bisignano*, No. 24-1545, 2025 WL 1742967 (7th Cir. June 24, 2025). After considering the ALJ's opinion and the parties' briefs, the Court reverses the part of the ALJ's opinion that determined Plaintiff was not disabled after March 31, 2021.

II.  **ALJ Decision**

The ALJ applied the Social Security Administration's five-step sequential evaluation process to Plaintiff's claims. (R. 17.) At step one the ALJ found that Plaintiff had not engaged in substantial gainful activity since February 1, 2020, the date she

2

became disabled. (R. 18.) At step two, the ALJ found that Plaintiff had the severe impairments of depressive disorder, anxiety disorder, schizophrenia, status/post hernia with repair, and obesity. (R. 19.)[4] At step three, the ALJ found that between the onset date and March 31, 2021, Plaintiff's medically determinable impairments could reasonably be expected to produce her alleged symptoms and that her statements concerning the severity of those symptoms were generally consistent with the evidence. (R. 20.)

For that reason, the ALJ found Plaintiff met the severity for Listing 12.03, schizophrenia spectrum and other psychotic disorders, and was therefore disabled during the closed period. Specifically, the ALJ noted that the listing's "paragraph A" criteria were met because Plaintiff delusions or hallucinations and disorganized thinking. (*Id.*) The "paragraph B" criteria were satisfied because Plaintiff's impairments caused a mild limitation in understanding, remembering, and applying information, a moderate limitation in interacting with others, and a marked limitation in both concentrating, persisting, and maintaining pace and managing and adapting herself. (*Id.*)

Because the ALJ found Plaintiff disabled for at least part of the claims period, she also had to determine if Plaintiff's disability continued through the end of the claims

---

[4] Plaintiff states in her brief that she only alleges errors concerning the ALJ's determination of her mental residual functional capacity. (Pl. Mem. at 2).

period. To do so, she undertook a seven-step process that assessed whether Plaintiff experienced medical improvement that was related to Plaintiff's ability to work, or if an exception applied. (R. 17.) At step one, the ALJ determined that beginning April 1, 2021, Plaintiff's severe impairments did not meet a Listing. (R. 21.) To that end, the ALJ undertook the "paragraph B" analysis and determined that Plaintiff had a mild limitation in understanding, remembering, and applying information and a moderate limitation in the remaining three criteria. (*Id.*)

At step two, the ALJ found that medical improvement had occurred in Plaintiff's condition and at step three determined that the improvement was related to Plaintiff's ability to work. (R. 22.)[5] At step five the ALJ found that Plaintiff had the same severe impairments as during the closed period and thus before step six, she determined that Plaintiff had the residual functional capacity to perform light work with the additional restrictions:

> Retains the capacity to understand, remember, concentrate, persist and perform simple, routine and repetitive tasks with the ability to follow both simple and detailed, but uninvolved, oral, written or diagrammed instructions in a low stress environment, defined as having few, if any, simple work-related decisions and few, if any, routine changes in the work setting; no interaction with the public and after the probationary period, only occasional superficial interaction with co-workers and routine interaction with supervisors. Plaintiff can attend for two hours at a time and then would need a ten-minute break which can be accommodated by

---

[5] Because the ALJ found both that medical improvement had occurred and it was related to Plaintiff's ability to work, she was not obligated to consider Step Four, which asks if an exception to medical improvement applies. (R. 18.)

4

routine breaks and lunch, and work should be free from a fast pace but able to meet daily quotas.

(R. 22.)

At step six the ALJ determined Plaintiff could not perform her past relevant work as a pharmacy tech, general office clerk, cleaner, or deli clerk. (R. 24.) At step seven the ALJ found that there were other jobs in the national economy that Plaintiff could perform including packager, sorter, and inspector. (R. 25.) Therefore, the ALJ found that Plaintiff was not disabled beginning on April 1, 2021. (*Id.*)

### III.    Legal Standard

Under the Act, a person is disabled if he has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a).

To determine whether a plaintiff is disabled, the ALJ considers the following five questions, known as "steps," in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform his former occupation? and (5) Is the plaintiff unable to perform any other work? 20 C.F.R. § 416.920(a)(4). In this case, as described above, the ALJ first undertook the five-step process and determined at step three that Plaintiff was

5

disabled because she met the listing for schizophrenia. The ALJ then considered the seven-step test to determine if Plaintiff's disability continued through the end of the claims period.

An affirmative answer at either Step Three or Step Five leads to a finding that the plaintiff is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer at any step other than at Step Three precludes a finding of disability. *Id.* The plaintiff bears the burden of proof at Steps One to Four. *Id.* Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show the plaintiff's ability to engage in other work that exists in significant numbers in the national economy. *Id.*

The Court does not "merely rubber stamp the ALJ's decision on judicial review." *Prill v. Kijakazi*, 23 F.4th 738, 746 (7th Cir. 2022). An ALJ's decision will be affirmed if it is supported by "substantial evidence," which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Id*. ALJs are "subject to only the most minimal of articulation requirements" and "need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024). "All we require is that ALJs provide an explanation for how the evidence leads to their conclusions that is sufficient to allow us,

6

as a reviewing court, to assess the validity of the agency's ultimate findings and afford the appellant meaningful judicial review." *Id*. at 1054.

The Seventh Circuit added that "[a]t times, we have put this in the shorthand terms of saying an ALJ needs to provide a 'logical bridge from the evidence to his conclusion.'" *Id*. (citation omitted). The Seventh Circuit has further clarified that district courts, on review of ALJ decisions in Social Security appeals, are subject to a similar minimal articulation requirement: "A district (or magistrate) judge need only supply the parties . . . with enough information to follow the material reasoning underpinning a decision." *Morales v. O'Malley*, 103 F.4th 469, 471 (7th Cir. 2024). The district court's review of the ALJ's opinion "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute its judgment for the ALJ's determination." *Chavez v. O'Malley*, 96 F.4th 1016, 1021 (7th Cir. 2024) (internal quotations omitted).

## IV. Analysis

Plaintiff argues that 1) the ALJ's finding of medical improvement as of April 1, 2021 was not supported by substantial evidence, and 2) the ALJ failed to properly evaluate Plaintiff's symptoms. (Pl. Mem. at 6, 14.) Because the Court finds that the ALJ did not support her finding that Plaintiff medically improved, it does not reach Plaintiff's second argument.

7

Before limiting benefits to a closed period, an ALJ must conclude either that a claimant experienced medical improvement sufficient to allow her to work or else that an exception to the rule applies. *Tumminaro v. Astrue*, 671 F.3d 629, 633 (7th Cir. 2011). The Commissioner bears the burden of proving that medical improvement has occurred. *Hickey v. Colvin*, No. 13 C 7857, 2015 WL 3929642, at *2 (N.D. Ill. June 25, 2015); 20 C.F.R. § 404.1594(b)(5). Medical improvement is defined by social security regulations as "any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable decision that you were disabled or continued to be disabled and is determined by a comparison of prior and current medical evidence which must show that there have been changes (improvement) in the symptoms, signs or laboratory findings associated with that impairment(s)." 20 C.F.R. § 404.1594(b)(1).

    A.    **Medical Evidence**

The parties do not dispute that the ALJ properly found Plaintiff disabled for at least a closed period of time. In finding that Plaintiff met the listing for schizophrenia from February 1, 2020 to March 31, 2021, the ALJ noted that prior to her onset date, Plaintiff had "considerable mental health treatment including inpatient mental health treatment for depression and schizophrenia/schizoaffective disorder with symptoms of hallucinations, paranoia, agoraphobia, decreased appetite, confusion, and easy agitation." (R. 20.) The ALJ then discussed evidence during the closed period that

8

Plaintiff had delusions and hallucinations and was talking to herself and responding to internal stimuli. For example, in January 2020 Plaintiff was found unresponsive in a bathroom, in April 2020 she appeared disheveled and disorganized with mild paranoia and was talking to herself, and medical records through March 2021 documented that Plaintiff was frustrated, easily distracted, and paranoid. (*Id.*)

In determining that Plaintiff's disability ended on March 31, 2021, the ALJ characterized Plaintiff's treatment as of that date as "conservative." (R. 21.) She explained that there were no exacerbations of symptoms requiring inpatient treatment or emergency department care, that medical records reflected mostly mild symptoms, and that mental status examinations in June and September 2021 did not support more than moderate limitations in the paragraph B criteria. (*Id., R, 23.*) The ALJ also pointed to Plaintiff's activities of daily living as supporting no more than moderate limitations as of the cessation date. (*Id.*) Specifically, the ALJ noted that Plaintiff testified that despite her paranoia, she shopped in stores, used public transportation, attended classes, and played bingo. (R. 23.) The ALJ also noted that Plaintiff managed her own medication and appointments, used a laptop and phone, made meals, and engaged in creative writing. (*Id.*) The ALJ found it notable that Plaintiff testified she sent a novella to a publisher in an attempt at publication. (*Id.*) Finally, the ALJ stated that Plaintiff's ability to work at a grocery store in the second quarter of 2021 demonstrated at least some ability to get along with others. (*Id.*)

9

### B. The ALJ Did Not Support With Substantial Evidence Her Finding that Plaintiff Medically Improved.

Plaintiff offers three reasons the ALJ's evaluation of her medical improvement was faulty. First, she contends that the ALJ failed to consider whether her relative improvement was a temporary remission and not true medical improvement. (Pl. Mem. at 6.) Next, she argues that in determining that Plaintiff medically improved, the ALJ failed to consider her longitudinal history, periods of prior remissions, and the nature of her schizoaffective disorder. (*Id.* at 9.) Finally, she contends that the ALJ's evaluation of the evidence supporting nondisability as of April 2021 was based on "impermissible and illogical" reasons. (*Id.* at 11.)

Social security regulations direct ALJs evaluating medical improvement to consider whether the evidence suggests a claimant is experiencing only temporary remission instead:

> In some cases, the evidence shows that an individual's impairments are subject to temporary remission. In assessing whether medical improvement has occurred in persons with this type of impairment, we will be careful to consider the longitudinal history of the impairment, including the occurrence of a prior remission, and prospects for further worsenings. Improvement in such impairments that is only temporary will not warrant a finding of medical improvement.

20 C.F.R. § 416.994(b)(2)(iv)D).[6]

---

[6] The regulations do not define the length of a "temporary" remission, although Plaintiff acknowledges that they suggest that sustained improvement that lasts for a year could suggest true medical improvement. (Pl. Mem. at 7.) The Seventh Circuit has not considered how long medical improvement must last before it is no longer considered a temporary remission.

10

Mental illnesses are particularly subject to periods of temporary remission followed by relapse. *Phillips v. Astrue*, 413 F. App'x 878, 886 (7th Cir. 2010) ("Many mental illnesses are characterized by 'good days and bad days,' rapid fluctuations in mood, or recurrent cycles of waxing and waning symptoms.") The regulations specifically contemplate that for claimants with schizophrenia, paranoia, and other psychotic disorders, while medical improvement is possible, it is not expected for individuals (like Plaintiff) who are at least 46 ½ years old and have an onset date at least five years prior to the current determination date. POMS: DI 26525.045.

The ALJ's evaluation of Plaintiff's schizophrenia did not adequately consider evidence that her relative improvement may have been merely a temporary remission. Nowhere in the opinion does the ALJ state that she considered whether that was the case. In this case, the omission compels remand.

Although the regulations direct ALJs to consider a claimant's longitudinal history and prior remissions when faced with evidence that improvement may only be temporary, the ALJ here did neither. The ALJ's sole mention of Plaintiff's prior medical history was the comment that records prior to the onset date "reflect considerable mental health treatment, including inpatient mental health treatment." (R. 20.) Defendant argues that that is sufficient to conclude that the ALJ properly considered Plaintiff's longitudinal history of schizophrenia. (Resp. at 12.) But absent any signal by

11

the ALJ that she considered Plaintiff's medical history as part of an evaluation of temporary remission, the Court finds the statement to be deficient.

The evidence the ALJ did not address is considerable. At the time of the hearing, Plaintiff had been treated for schizophrenia for over 20 years. She had been hospitalized six times. (R. 62.) Between 2001 and 2015, Plaintiff was adjudicated disabled and received SSI benefits; they were later stopped only because her financial circumstances changed for reasons unrelated to her disability. (R. 207, 216.) After her benefits ended, Plaintiff's symptoms worsened, and she became homeless. (R. 1784, 1793.) The ALJ did not discuss any of this evidence, nor did she acknowledge that Plaintiff did not restart psychiatric care until 2020, when she connected with an organization serving the unhoused. (R. 1778, 2079.)

In addition to her failure to address Plaintiff's longitudinal history, the ALJ also did not mention Plaintiff's prior episodes of temporary remission. The Social Security Administration previously found Plaintiff disabled and entitled to SSI benefits from February 2001 through April 2015, when she became financially ineligible. (R. 207, 216.) During that time of disability, Plaintiff experienced a temporary remission in 2008 and 2009, during which she worked for several months as an office clerk. (R. 46-47, 203.) Later that same year, Plaintiff's symptoms of paranoia, hallucination, and paranoia worsened, and she experienced one of her six inpatient hospitalizations. (R. 486.) Plaintiff received disability benefits during that entire time.

The Court recognizes that it is the sole authority of the ALJ to weigh the evidence when determining whether a claimant is disabled. But in this case, it is not clear how or even if the ALJ considered evidence directly relevant to Plaintiff's longitudinal history of schizophrenia or prior remissions. Therefore, the Court is unable to trace the ALJ's reasoning for her determination that Plaintiff's relative improvement in symptoms at the end of the closed period was not merely a temporary remission instead of true medical improvement.

While the ALJ's failure to consider evidence of temporary remission was enough on its own to compel remand, she also offered flawed reasons for finding Plaintiff's disability ended on March 31, 2021. Specifically, a number of pieces of evidence the ALJ relied on to support her finding of medical improvement also existed at times when Plaintiff was adjudicated disabled. For example, the ALJ pointed out that as of the cessation date, Plaintiff had no exacerbations of symptoms requiring inpatient treatment or emergency care. (R. 21.) But Plaintiff also did not have inpatient treatment or emergency care during the closed period, so it is unclear why that factor is relevant to finding Plaintiff not disabled after March 31, 2021. Similarly, the ALJ noted that Plaintiff's treatment as of the cessation date was "conservative," which ignored the fact that such treatment – medication and therapy – had been essentially the same during the closed period. (*Id.*)

The ALJ relied on other evidence that was arguably the same both during the closed period and after as justification for finding Plaintiff improved. For example, the ALJ stated that Plaintiff's work activity in the second quarter of 2021 when she worked at a grocery store demonstrated at least some ability to interact with others. (R. 23.) But Plaintiff also worked in the first quarter of 2021 – during the period when she was disabled – and earned more than she did after the end of the closed period. (R. 225.)

The ALJ's treatment of Plaintiff's activities of daily living show a similar tendency to credit activities after the cessation date that Plaintiff also performed during the closed period. The ALJ pointed to Plaintiff's ability to shop in stores, use public transportation, and independently manage her medications and appointments as some evidence that she was not disabled after the cessation date. But Plaintiff testified that she did all of these things – and cleaned the homeless shelter where she was living – during the closed period too. (R. 51, 55-56.) The Court will not reweigh the evidence, but neither will it find substantial evidence in the ALJ's reliance on facts that existed both during and after the cessation date.

14

## CONCLUSION

For the reasons explained above, the Court grants Plaintiff's motion to remand the ALJ's decision (Dkt. 11) and denies Defendant's motion to affirm. (Dkt. 13).

SO ORDERED.

ENTER:

_____
LAURA K. MCNALLY
United States Magistrate Judge

DATED: October 28, 2025